## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JESSE R. SPURLOCK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-991** |
| **MARLIN GUSMAN, ET AL.** | **SECTION "R"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Jesse R. Spurlock, was a state inmate at the time he filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants Sheriff Marlin Gusman and the Louisiana Department of Public Safety and Corrections. In the complaint, he stated his claims as follows:

> 1. Being house in substandard Department of Correction Facility. 2. Inadequate medical care. 3. Lack of Security. 4. Know kind of job training. 5. No drugs programs. 6. Lack of legal library. 7. Unsanitary eating condition. 8. Peeling paint. 9. Mildew on walls. 10. Rusts on bars. 11. No Relegious Service. 12. No education programs.[1]

Due to the cursory manner in which plaintiff's claims were stated, the Court held a Spears hearing on April 28, 2010. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of

---

[1] Rec. Doc. 1, p. 3.

a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory,

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint and his Spears hearing testimony,[2] the undersigned recommends that plaintiff's claims be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary relief from a defendant who is immune from such relief.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

3

## II. Louisiana Department of Public Safety and Corrections

As a preliminary matter, the Court notes that the Louisiana Department of Public Safety and Corrections is an improper defendant for two reasons.

First, state agencies are not "persons" subject to suit under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 66 (1989); Hyatt v. Sewell, 197 Fed. App'x 370 (5th Cir. 2006); Cronen v. Texas Department of Human Services, 977 F.2d 934, 936 (5th Cir. 1992); McGuire v. Lafourche Parish Work-Release Facility, Civ. Action No. 09-6755, 2009 WL 4891914, at *3 (E.D. La. Dec. 4, 2009); Levy v. Office of Legislative Auditor, 362 F.Supp.2d 729, 735 (M.D. La. 2005); Goins v. State of Louisiana, Civ. Action No. 04-1159, 2004 WL 2694899, at *2 (E.D. La. Nov. 22, 2004); Greer v. Tran, Civ. Action No. 02-3145, 2003 WL 21467558, at *2 (E.D. La. June 23, 2003).

Second, pursuant to the Eleventh Amendment, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's consent." Rodriguez v. Texas Commission on the Arts, 199 F.3d 279, 280 (5th Cir. 2000); see also U.S. Const. amend. XI. The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999); McGuire, 2009 WL 4891914, at *3-4.

Accordingly, plaintiff's claims against the Louisiana Department of Public Safety and Corrections must be dismissed.

### III. Relief Requested

The Court further notes that, regardless of the identity of the defendants named, the forms of relief requested are not available in this lawsuit. In his complaint, plaintiff requested the following relief:

> That these condition to be brought up to Department of Correction standard. Or to be place in an adequate Department of Correction facility with job training program or work-release. And compensate for pain and suffering a sum of $25,000 thousand dollars.[3]

Plaintiff testified at the Spears hearing that he was due to be released from incarceration on April 30, 2010, and the Court has since confirmed that he was in fact released. Therefore, to the extent that he was requesting declaratory or injunctive relief in this lawsuit, any such requests have been rendered moot by his release. See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); see also Davis v. Wall, No. 94-41002, 1995 WL 136204, at *2 n.3 (5th Cir. Mar. 9, 1995); McGee v. Camnova, Civ. Action No. 3:08-CV-2062, 2009 WL 35056, at *2 (N.D. Tex. Jan. 2, 2009); Dean v. Corrections Corporation of America, No. 2:05CV31, 2006 WL 2376224, at *2 (N.D. Miss. Aug. 16, 2006); Serrano v. Bowles, No. 3:02-CV-0686, 2003 WL 21448357, at *1 (N.D. Tex. May 16,

---

[3] Rec. Doc. 1, p. 4.

2003). To the extent that plaintiff was requesting a transfer to a state facility, that request is also obviously now moot.

Additionally, plaintiff's request for compensatory damages is precluded by 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Because plaintiff suffered no physical injury as result of the alleged violations in this case, he is barred from recovering the requested compensatory damages. Herman, 238 F.3d at 665-66; see also Mayfield v. Texas Department of Criminal Justice, 529 F.3d 599, 605-06 (5th Cir. 2008); Massingill v. Livingston, 277 Fed. App'x 491, 493 (5th Cir. 2008); Delafosse v. Stalder, 169 Fed. App'x 922 (5th Cir. 2006).

Nevertheless, out of an abundance of caution, the Court also notes that, even if plaintiff's claims are considered on the merits, they are still subject to dismissal for the following reasons.

### IV. Plaintiff's Claims

#### A. Substandard Housing

Plaintiff's first claim was that the housing within the Orleans Parish Prison system was substandard. Such conclusory allegations that prison living conditions are "substandard" fail to state a claim on which relief may be granted. Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009); Friedland v. Hayman, Civ. Action No. 06-2583, 2006 WL 3359716, at *10 (D.N.J. Nov. 16, 2006).

B.  Medical Treatment

Plaintiff's second claim was that medical care, specifically mental health care, within the Orleans Parish Prison system was "inadequate."  It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

In the instant case, there was no indication that plaintiff was suffering from a serious medical need.  The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  At the Spears hearing, plaintiff acknowledged that he was not receiving any mental health treatment or medications prior to his incarceration.  Asked why he now needed such services, he simply stated that he was experiencing depression and stress as a result of being incarcerated and he believed that the services would be helpful.  However, there was no indication that he was a danger to himself or others or that the depression and stress he was experiencing was anything more than that normally experienced by virtually anyone in jail.  There was certainly no indication that he was suffering from mental health problems which were so severe as to require immediate treatment.

In any event, plaintiff also testified that he had first requested mental health services only approximately three weeks prior to the Spears hearing.  A three-week wait for a non-emergency

mental health appointment does not strike the Court as unreasonable or longer than the delays generally experienced by persons seeking such care outside of prison. However, even if the delay were considered undue, mere delay is insufficient to create § 1983 liability unless substantial harm resulted. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Bennett v. Louisiana *ex rel*. Department of Public Safety and Corrections, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009); Davis v. Kuykendall, 242 Fed. App'x 961, 962-63 (5th Cir. 2007). In this case, there was no allegation or indication that plaintiff was substantially harmed by the three-week delay prior to the Spears hearing, and he was then released from incarceration only days after that hearing.

### C. Lack of Security

Plaintiff's next claim was that the jail lacked adequate security. He testified at the Spears hearing that, although he had never been threatened or hurt while in the facility, he was scared that he might be harmed. He said that the nearest guard was approximately "half a football field away" and could not see everything happening in the cells.

To the extent that plaintiff was contending that jail officials were negligent for failing to provide better security, that claim is not cognizable in this federal proceeding. See Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.").

To the extent that plaintiff was attempting to assert a federal constitutional claim, it would be a failure-to-protect claim. See, e.g., Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim). It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiff did not allege that the purportedly inadequate security ever placed *him* in harm's way, that *he* personally was particularly susceptible to being attacked, or that prison officials had been made aware of and were deliberately indifferent to *his* need for protection. Instead, plaintiff offered nothing more than his vague and conclusory allegation that security was inadequate, and it is clear that such allegations do not suffice to state a federal claim. See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

### D. Lack of Programs for Convicted Prisoners

Plaintiff's fourth, fifth, and twelfth claims were that prison offered no job training programs, drug programs, or education programs. Those claims are frivolous because there is no constitutional right to educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *10 (E.D. La. Mar. 8, 2010); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

### E. Lack of Law Library

Plaintiff also claimed that there was no law library available within the Orleans Parish Prison system. It is clear that prisoners have a constitutional right of meaningful access to the courts, including access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal assistance" in the prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Regarding this claim, petitioner testified at the Spears hearing that he wanted access to a law library to better prepare the instant complaint. However, claims alleging violations of the right of

access to courts are not cognizable unless the inmate's position as a litigant was prejudiced by the denial of access. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Moreover, it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. In this case, plaintiff was able to set forth his claims in the complaint and to explain them adequately at the Spears hearing, and he has therefore experienced no prejudice as result of not having direct access to a law library when drafting the complaint. Because he was neither denied access to this Court nor suffered any prejudice, his claim is not cognizable. See Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).

Further, in any event, numerous cases in this Court over the years have established that, although inmates within the Orleans Parish Prison system are not allowed direct access to a law library, they are allowed to request and borrow law books from a central law library. The adequacy of that legal program, including the use of that law book loan system, was fully litigated in Howard v. Foti, No. 82-460 c/w 84-499, and monitored by this Court for many years. In that case, the Court fashioned an order to ensure that the prison law library and legal services program were constitutionally adequate, and it was determined that the Orleans Parish Prison system's law library and legal services program would be constitutionally adequate if the specifications set forth in the Court's order were met. Howard v. Foti, No. 82-460 c/w 84-499, 1989 WL 152715, at *1 (E.D. La. Dec. 14, 1989); see also Francis v. Gusman, Civ. Action No. 05-4065, 2006 WL 1985961, at *4

(E.D. La. June 21, 2006); Griffin v. Foti, Civ. Action No. 03-2670, 2004 WL 1687864, at *2 (E.D. La. July 27, 2004). This Court need not endlessly relitigate the very issue decided in Howard v. Foti, especially in that plaintiff has not alleged that either the facts or the law have changed since that case was decided. Therefore, this Court looks to that precedent and finds that plaintiff's claim is meritless.[4] See Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010).

## F. Unsanitary Eating Conditions

Plaintiff next complained of allegedly unsanitary eating conditions within the prison. At the Spears hearing, he explained that at times the food was prepared and served by people without gloves, shirts, or hairnets and was often just handed through the bars. Even if those allegations are true, plaintiff's claim is not actionable. Without an allegation of resulting harm, such complaints regarding food service practices simply are not of constitutional dimension. Wiley v. Blanco, Civ. Action No. 06-3512, 2007 WL 1747019, at *10 (E.D. La. June 15, 2007); see also Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *4 (E.D. La. Mar. 8, 2010); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003). Moreover, mere negligence on the part of the jail officials in the way they manage the food services does not amount

---

[4] "Stare decisis is the doctrine that demands adherence to judicial precedents." Meadows v. Chevron, U.S.A., Inc., 782 F. Supp. 1189, 1192 (E.D. Tex. 1991), aff'd in part, 990 F.2d 626 (5th Cir. 1993). The doctrine requires that like facts be given like treatment in a court of law. See Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998). Stare decisis is not narrowly confined to parties and their privies; rather, when its application is appropriate, the doctrine is broad in impact, reaching strangers to earlier litigation. Equal Employment Opportunity Commission v. Trabucco, 791 F.2d 1, 2 (1st Cir. 1986).

to a constitutional violation. Flowers v. Dent, No. 93-1987, 1994 WL 171707, at *3 (5th Cir. Apr. 29, 1994).

### G. Unpleasant Living Conditions

Plaintiff's eighth, ninth, and tenth claims were that the prison had peeling paint, mildew on the walls, and rust on the bars. Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff clearly did not rise to that level. See, e.g., Ellis v.Crowe, Civ. Action No. 09-3061, 2010 WL 724158, at *14-16 (E.D. La. Feb. 19, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Crook v. McGee, No. 2:07cv167, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008). The mere fact that the prison was not always as pleasant as he would have liked did not render the conditions unconstitutional. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

### H. Lack of Religious Services

Plaintiff's eleventh claim is that the prison failed to offer adequate religious services. At the Spears hearing, he testified that he is a Baptist.

13

The First Amendment, as applied to the states by the Fourteenth Amendment, guarantees the right to free exercise of religion. U.S. Const. amend. I; U.S. Const. amend. XIV. "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). Prison regulations which impinge on that right are invalid unless they are reasonably related to legitimate penological interests. Id. at 349.

Plaintiff, however, did not allege that prison regulations existed which prohibited him from practicing his religion or in any way impinged on his right to exercise his Baptist faith. Rather, from his testimony at the Spears hearing, it was evident that the gist of his claim was simply that there were a greater array of religious services available in facilities operated by the Louisiana Department of Corrections. Even if that it were true, it would be of no moment. Here, there was no allegation or indication that the Orleans Parish Prison system failed met the *minimum* constitutional standards guaranteed by the First Amendment. As long as those standards were met, that was all that was required, even if some state facilities go *beyond* their constitutional obligations and *voluntarily* offer additional services.

Further, even if plaintiff's claim were broadly construed as an equal protection claim, it would fare no better. To state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). In this case, plaintiff failed to satisfy either prong.

As to the first prong, plaintiff's allegations were clearly insufficient. As noted, plaintiff compared himself and the conditions of his confinement to prisoners in Louisiana state prisons and the conditions of their confinement. However, that was not the relevant comparison for equal protection purposes. Because plaintiff had no right to be housed in a state prison,[5] any comparison to prisoners in Louisiana state prisons and the conditions of their confinement was irrelevant. Rather, for equal protection purposes, the only relevant comparison was whether he is treated differently than persons "similarly situated," and the only such persons in that category are his fellow inmates within the Orleans Parish Prison system. See Treece v. Andrews, No. 05-30895, 2006 WL 2686676, at *1 (5th Cir. Sept. 20, 2006); Woods v. Collins, No. 95-10432, 1995 WL 581879, at *2 (5th Cir. Sept. 21, 1995); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995); Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *2 (E.D. La. Jun. 18, 2009); Hymel v. Champagne, No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007); Santos v. Louisiana Department of Corrections Secretary, Civ. Action No. 95-4215, 1996 WL 89260, at *5 (E.D. La. Feb. 28, 1996). Because

---

[5] Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law further expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a). Moreover, plaintiff had no federal constitutional right to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison was much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).

plaintiff did not allege that he was treated differently than those prisoners, he stated no cognizable equal protection claim.

Further, the claim would also fail at the second prong of the analysis. As to that prong, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of ... the adverse impact it would have on an identifiable group." United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); see also Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). Plaintiff did not allege that the different treatment stemmed from an intent to discriminate against him because he was a Baptist or due to his membership in any identifiable group. "[I]n the absence of an allegation of discriminatory motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief based on the denial of equal protection." Stevenson v. Louisiana Board of Parole, No. 01-30252, 2001 WL 872887, at *1 (5th Cir. July 11, 2001).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary relief from a defendant who is immune from such relief.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[6]

New Orleans, Louisiana, this fifth day of May, 2010.

								_____
								**SALLY SHUSHAN**
								**UNITED STATES MAGISTRATE JUDGE**

---

[6] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.